1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PATRICIA SIMON,

11             Plaintiff,                    No. CIV S-08-565 KJM

12        vs.

13
     MICHAEL J. ASTRUE,
14   Commissioner of Social Security,

15             Defendant.                    ORDER

16   _____/

17             Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under

19   Title II of the Social Security Act ("Act").   For the reasons discussed below, the court will grant

20   plaintiff's motion for remand, deny the Commissioner's cross-motion for summary judgment,

21   and remand this matter under sentence four of 42 U.S.C. § 405(g) .

22   /////

23   /////

24   /////

25   /////

26   /////

I. Factual and Procedural Background

   In a decision dated September 28, 2006, the ALJ determined plaintiff was not disabled.[1]  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ found plaintiff has severe impairments of status post right SLAP repair and mild ghenohumeral arthritis but these impairments do not meet or medically equal a listed impairment; plaintiff can perform light work with no overhead work and frequent but no constant handling; there is no erosion in the occupational base; and based on the Medical-Vocational Rules, plaintiff is not disabled.  Administrative Transcript ("AT") 19-24.

/////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

   Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
   Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
   Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
   Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
   Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1 Plaintiff contends that the ALJ improperly rejected the opinions of treating and examining

2 physicians and should have obtained the testimony of a vocational expert.

3 II.  Standard of Review

4        The court reviews the Commissioner's decision to determine whether (1) it is

5 based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

6 record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

7 Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

8 Substantial evidence means more than a mere scintilla of evidence, but less than a

9 preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

10 Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

11 reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

12 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

13 197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

14 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

15 detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

16 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

17 supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

18 substantial evidence supports the administrative findings, or if there is conflicting evidence

19 supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

20 Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

21 improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

22 1335, 1338 (9th Cir. 1988).

23 /////

24 /////

25 /////

26 /////

III.  Analysis

    A.  Medical Opinions

        Plaintiff contends the ALJ improperly rejected the opinions of her treating physician, Dr. Dotson, and examining physician, Dr. Pliam.[2]  Plaintiff's position with respect to the ALJ's treatment of these record medical opinions is well-taken and dispositive of the matter.

        The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

        To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

---

[2]  Plaintiff contends the ALJ also improperly rejected the opinion of examining psychologist, Dr. Kahler, in finding plaintiff has no severe mental impairment.  AT 212-219.  The court finds no error in the ALJ's analysis at step two of the severity of plaintiff's impairments.  AT 19-20.

1 non-examining professional, without other evidence, is insufficient to reject the opinion of a

2 treating or examining professional.  Lester, 81 F.3d at 831.

3         Examining orthopedist Dr. Pliam opined in a report dated May 14, 2005 that

4 plaintiff should be precluded from repetitive activities involving her upper extremities.  AT 225.

5 Plaintiff's treating physician, Dr. Dotson similarly opined in June 2005 that plaintiff should

6 avoid any repetitive or overhead activities.  AT 256.  A year later, Dr. Dotson again confirmed

7 that plaintiff should be restricted to "minimal overhead/repetitive activities."  AT 269.

8         The ALJ claimed to credit the opinions of Dr. Pliam and Dr. Dotson but did not

9 include the limitation on repetitive upper extremity activities in the residual functional capacity

10 finding.  AT 21, 23.  Defendant contends that because Dr. Pliam opined plaintiff should improve

11 within four to six months, the limitation on repetitive activities was accommodated by the

12 restriction in the residual functional capacity finding to "frequent but no constant handling."

13 This contention is unsupported by the record.

14         Although Dr. Pliam indicated plaintiff's limitations might improve over time, he

15 specifically stated that he suspected that even with improvement, plaintiff's repetitive activities

16 would have to be limited in time to "a few hours continuously at most."  AT 225.  Moreover,

17 plaintiff's treating physician, opining a year after Dr. Pliam's evaluation, found no improvement.[3]

18 AT 269.  A residual functional capacity that requires performing an activity up to two-thirds of

19 the time cannot be considered consistent with the restrictions assessed by Drs. Pliam and

20 Dotson.[4]

21 /////

22

23       [3]  The state agency residual functional capacity finding also was predicated on the assumption that plaintiff's condition would improve.  AT 262, 268.

24       [4]  Defendant's argument that the limitations assessed by Drs. Pliam and Dotson pertained
25 only to overhead activities is utterly belied by the record.  The ALJ recognized that Dr. Dotson limited plaintiff to avoiding "repetitive or overhead activities."  AT 23, 256 (emphasis added).
26 Dr. Pliam specifically restricted plaintiff to "lifting 5 pounds, or less, repetitively" and addressed separately restrictions on overhead activities and the ability to perform repetitive work.  AT 225.

1        The remaining question is whether to remand this case to the ALJ or to order the

2   payment of benefits.  "The decision whether to remand the case for additional evidence or simply

3   to award benefits is within the discretion of the court." <u>Stone v. Heckler</u>, 761 F.2d 530, 533 (9th

4   Cir. 1985).  Generally, the court will direct the award of benefits "in cases where no useful

5   purpose would be served by further administrative proceedings or where the record has been

6   thoroughly developed." <u>Varney v. Secretary of Health and Human Services</u>, 859 F.2d 1396,

7   1399 (9th Cir. 1988).

8        In this case, no vocational expert testimony was taken.  Because of the erosion in

9   the occupational base caused by the limitation on repetitive upper extremity activities, it is

10  necessary for a vocational expert to testify whether plaintiff is unable to engage in any work.

11  SSR 96-9.[5]  The matter will therefore be remanded for further proceedings.

12       For the foregoing reasons, this matter will be remanded under sentence four of 42

13  U.S.C. § 405(g) for further development of the record and further findings addressing the

14  deficiencies noted above.

15  /////

16  /////

17  /////

18  /////

19

20       [5] SSR 96-9p provides in pertinent part:

21  Manipulative limitations: Most unskilled sedentary jobs require good use of both hands and the
    fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of the
22  fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and
    fingers for repetitive hand-finger actions.
23
    Any *significant* manipulative limitation of an individual's ability to handle and work with small
24  objects with both hands will result in a significant erosion of the unskilled sedentary occupational
    base. For example, example 1 in section 201.00(h) of appendix 2, describes an individual who
25  has an impairment that prevents the performance of any sedentary occupations that require
    bilateral manual dexterity (i.e., "limits the individual to sedentary jobs which do not require
26  bilateral manual dexterity").

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for remand is granted;

2.  The Commissioner's cross motion for summary judgment is denied; and

3.  This matter is remanded for further proceedings consistent with this order.

DATED:  September 30, 2009.

_____
U.S. MAGISTRATE JUDGE

006 simon.ss